## LEE v. GREENWOOD AGENCY CO.

[87 South. 485, No. 21329.]

BROKERS. *Expenses incurred by owner's authority in canceling leases, recoverable, though no commission allowed.*

While no commissions are recoverable by a broker, where they are based on the amount received for the land by the owner, and the sale has failed through no fault of the owner, the broker may nevertheless recover expenses incurred by the owner's authority in securing options to cancel leases to enable the owner to deliver possession to the prospective buyer.

On suggestion of error. Suggestion of error sustained in part, and overruled in part. For former opinion, see 86 So. 449.

*Gardner, McBee & Gardner,* for appellant.

By way of reply to the brief for appellee, we wish to again emphasize the fact that appellee is in error in assuming that the contract in this case was for it to obtain a purchaser ready, willing and able to purchase on the terms proposed.

As a matter of fact, the contract sued on in this was made by a letter of appellee to appellant, dated 7th of December, 1918, in which it says: "We would be willing to undertake the sale of this place at the price of seventy-five dollars per acre, you to pay us for our services, a commission of two and one-half per cent on the amount you receive. But we must act immediately as the season is well advanced for making a deal of this kind."

To this offer, appellant replied, accepting the proposition as shown by his telegram which is as follows: "New York, December 16, 1918. Greenwood Agency, R. P. Farish, Secretary, Greenwood, Mississippi. You are authorized to proceed on basis your letter seventh.
(Signed) BLEWETT LEE." (R. 15.)

This then, was the contract made between appellant and appellee, and is the contract that was never carried out, and therefore, appellee is not entitled to recover, because the contract was never completed, and it was upon the theory of a completed contract that the contract was made.

Appellee in its brief, speaks of appellant having withdrawn the plantation from sale. By reference to appellant's letter dated December 30, 1918, r. p. 10, it will be seen that a limit was fixed as to when this property should be sold, that is to say, appellant declined to allow any longer than the 15th of January, in which the property should be sold, and it was on the 20th of January, 1919, that he wrote the letter declining to permit appellee to have any further connection with the sale of the property. Appellee in its brief, on page 4, says: "There was a very serious defect in the title."

The question naturally arises, what was that defect? The correspondence shows that the alleged defect was nothing more nor less than a *lis pendens* notice filed on the *lis pendens* docket of Leflore county, showing that suit had been brought in Lowndes county, in which the title to this property was affected. Since that time, the suit which was then pending in Lowndes county notice of which was filed on the *lis pendens* docket in this county, has been decided, as we have shown in our original brief. in favor of appellant, that is to say, the decision of this court sustained the demurrer and the decision of the court below, holding that the alleged suit affecting this title was no lien or cloud whatever upon appellant's title to "Buckhorn Plantation."

However, for the sake of argument, admit it as a fact that appellant's attorney refused to certify to the abstract, because of this *lis pendens* notice, then what is the effect of a *lis pendens* notice? To what extent and how does it affect the title to real estate, and in what way was that *lis pendens* notice a defect in appellant's title?

Quoting from Maupin on Marketable Titles to Real Estate, 2 Ed., page 292, we find this author lays down the

rule: "A mere *lis pendens* without evidence that it is well founded is no encumbrance." (30 Pac. 727.) The same author on page 732 says:

"It is obvious that a title cannot be rendered unmarketable by a mere naked adverse claim to the premises without color of title; otherwise a purchaser might always avoid performance of his contract by procuring a stranger to set up such a claim. *Young* v. *Lillard,* 1 A. K. Marsh (Ky.) 482. In the note it is said an alleged adverse claim unsustained by record evidence does not make a title doubt· ful. *Allen* v. *Phillips,* 2 Litt. (Ky.) p. 1. A purchaser may be compelled to take the title if it appears that the adverse claim has been decided, barred or released. *Jackson* v. *Murray,* 57 B. Monroe (Ky.), 184, 17 Am. Dec. 53. It is not a conclusive objection to the title that a third party has filed a bill against the seller, claiming a right to the estate, but the nature of the adverse claim will be looked into (1 Sugden, Vendors, 8 Am. Ed., p. 589) where the purchase money was detained in court until the rights of an adverse claimant could be determined, in a suit which was then pending.

This same author says on page 781: "But it has been held that a *lis pendens* without evidence to show it is founded upon a just claim, is no such incumbrance as will justify a purchaser in refusing to perform the contract. Citing *Wilsey* v. *Dennis,* 44 Barb. (N. Y.) 354. This case shows that the claim represented by the *lis pendens* must be valid and legal.

Defective Title. Ruling Case Law lays down the rule, that neither a pending action brought to establish title to, or a lien upon land, nor a duly recorded notice of its pendency, of itself, makes the title defective, or creates a lien upon the land." 17 R. C. L., p. 1026, sec. 20; *Hayes* v. *Nourse,* 11 Am. St. Rep. 7000.

We therefore contend that this alleged *lis pendens* notice does not show any defect of title, and in fact does not affect the title at all to the extent of preventing a purchaser willing to purchase, if he had ever intended doing

so. The mere filing of a *lis pendens* notice, without more, does not make the title defective or unmarketable. 39 Cyc., p. 1464; 30 N. E. 264.

"The law does not require the title to be absolutely free of suspicion or possible defect, but, only requires a title which a reasonable purchaser, well informed as to the facts and their legal bearings, willing and anxious to perform his contract, and in the exercise of that prudence which business men ordinarily bring to bear upon such transactions, be willing to accept and ought to accept." 39 Cyc., 1456; 135 A. S. R. 342; 114 A. S. R. 723; 69 L. R. A. 785; 8 L. R. A. (N. S.) 139.

Marketable Title. "To render a title marketable, it is necessary only that it shall be free from reasonable doubt, a purchaser is not entitled to demand a title absolutely free from every possible technical objection, but only such title as a reasonable, well informed and intelligent purchaser, acting upon business principles, would be willing to accept." *Cummings* v. *Dolan,* 132 A. S. R. 986, and notes thereto. We commend this case on account of the copious notes which illustrates every phase and feature of a marketable title, and which, we say, shows that the alleged defect in this case was imaginary, rather than real.

The telegrams and letters in the record in this case, show all of the dealings between appellant and appellee, and in the light of the authorities which we have quoted we claim first, that there was no defect in the title because of the alleged *lis pendens* notice; second, the alleged *lis pendens* notice of the suit in Lowndes county has since been eliminated by the decision of this court in the case of *Thos. G. Blewett et al* v. *Blewett Lee, et al.,* No. 21220, decided by this court some time last summer; third, there was never any sort of opportunity given appellant to show that the alleged defect, of title was absolutely without any merit, and that he was in a position to give to the alleged purchaser a perfect record title, independent of his ability financially to warrant the title as against any alleged defect.

We, therefore, ask that the decree of the court below may be reversed and this bill dismissed.

*E. L. Mounger,* for appellee.

Suppose the purchaser was produced, ready, willing and able to purchase and the appellant arbitrarily and without excuse refused to consummate the sale.   The appellant would receive nothing, but could it be contended that the appellee was entitled to nothing.   What is the difference.

Some one must suffer loss.   Either the agent who performed his undertaking and failed in nothing must lose his time, expense and the value of his services, or the seller who received these services and who caused this expenditure of time and money, but who could not or did not carry out his undertaking, must pay.

The appellee had a right to rely on the validity of the appellee's title and did rely on it.   There was a very serious defect in the title.   This was no feigned or captious objection to the title.   It was raised by the appellant's own attorney and he refused to certify the title.   It was natural that the purchaser should decline to take the land with a suit pending.   The appellant must have known of the pendency of this suit.   The friends who might try to break up the trade, referred to in appellant's letter of January 9th, (page 23) are evidently the complainants in the suit in which the *lis pendens* notice was filed.   The appellee had no knowledge or notice of any defect and the appellant is liable for the commissions earned and the expenses incurred pursuant to his contract.   *Roberts* v. *Kimmons,* 65 Miss. 333, 3 So. 736; *Yoder* v. *Randol,* 3 L. R. A. (N. S.) 5 and note; *Little* v. *Fleishman,* 24 L. R. A. 1182, and note; *Backrenridge* v. *Clairdge & Paine,* 43 L. R. A. 610, and note; *Leonard* v. *Vaughan,* 57 L. R. A. (N. S.) 717, and note; *Dean* v. *Williams,* 106 Pac. 130.

There was an implied contract that the appellant had the ability and could confer upon the purchaser a perfect

title to the property. *Gauthier* v. *West,* 45 Minn. 192, 47 N. W. 656. The mere fact that the contract contains a stipulation that the commissions are to be paid out of the purchase price will not prevent the broker from recovering the same when the sale is prevented by reason of the defective title of his principal." *Cheatham* v. *Yarbrough,* 90 Tenn. 77, 15 S. W. 1076. See, also, *Berg* v. *San Antonio St. Ry. Co.,* 17 Tex. Civ. App. 291, 42 S. W. 647, 43 S. W. 929.

So, in *Stevenson* v. *Morris,* 69 Miss. 232, the commissions were to be paid on the money realized from the sales made to purchasers found by the agent. The purchasers were found, but the manufacturer was unable to ship the goods in a reasonable time and the sales were lost, and no money was realized from the sales. Yet, it was held that the agent could recover. See, also, *Nagle* v. *McNorton,* 65 Miss. 197; 2 Corpus Juris, 768; Agency, secs. 436, 437; 2 Corpus Juris, 770, notes, 6 & 8.

But the appellant contends he was not given time to perfect the title. The appellee was not under any obligation to wait until the title could be perfected, nor was the appellee or the purchaser to wait the outcome of the suit. Nothing is said in the contract about this. All parties were proceeding on the assumption that the title was good and valid. It is true that the appellant telegraphed that there was nothing to the suit and the opinion of Mr. Lee, splendid lawyer that he is, was entitled to weight, but very many splendid lawyers have thought there was nothing in the suit of the other fellow, and, to their sorrow, have found otherwise; and it is not surprising that the purchaser should have been unwilling to reply implicitly on Mr. Lee's opinion and take the property when Mr. Lee's own attorney refused to certify the title as good. Moreover the appellant made no effort to remedy the defect, but only offered his personal guaranty in lieu of a perfect title. The purchaser was under no obligation to buy or the appellant to sell a law suit. 36 Cyc., 632.

The appellant, in his letter of January 20th, page 38, recognized the defect and withdrew the property from sale. The case of *Hudson* v. *Watson*, 26 Miss. 357, cited by counsel, has no application. It simply decides as to when a party can put the other in default for not tendering a deed. The appellant made no offer to cure the defect, but on the contrary, withdrew the lands from sale. He made no effort whatever and there is no merit in counsel's complaint that he was not afforded sufficient time. *Kimbrough* v. *Curtis*, 50 Miss. 120; *Robinson* v. *Harbour*, 42 Miss. 800.

The case of *Johnson* v. *Sutton*, 94 Miss. 544, is not applicable to this case. In that case the terms upon which the lands were to be sold were not specified and actual sale was to be made; while in the case at bar, as in *Cook* v. *Smith*, 119 Miss. 375, the terms of the sale were specified and the agent performed his duty and was entitled to his commissions where he produced the purchaser ready, willing and able to buy upon the terms specified.

The appellant agreed to the sale to this purchaser and executed the deed and, in his letter of January 11, 1919, pages 27 and 28, he recognizes that appellee had earned its commissions and was entitled to the expenses incurred and states the amounts. It was the fault of no one but the appellant that the sale was not consummated, and the appellant cannot plead his own wrong. *Bailey* v. *Padgett*, 70 So. 637; *Sharpley* v. *Lee Moody & Co.*, 44 So. 650; *Long* v. *Griffith*, 113 Miss. 659.

We, therefore, respectfully submit that appellant's demurrer should have been overruled and the decree of the court below should be affirmed.

W. H. COOK, J., delivered the opinion of the court.

On a former day of this term the judgment of the lower court overruling a demurrer to the bill of complaint was reversed, and the bill of complaint dismissed, and counsel for appellee now suggests and earnestly insists that we erred in so doing, and especially in denying appellee the right to recover the amount paid out for expenses incur-

red at the instance and request of appellant in procuring agreements for the cancellation of certain leases on the lands which appellee undertook to sell.

We have given this record a careful reconsideration, and we adhere to the former opinion, in so far as it denies to appellee the right to recover commissions on the proposed sale. However, it appears from the bill of complaint and exhibits that the lands which appellee undertook to sell were covered by lease contracts, and both parties recognized the necessity of securing an option to cancel these lease contracts in order that appellant might be able to deliver possession of the lands in the event a sale should be consummated. It further appears from the correspondence between the parties that appellant was advised that it would be necessary to incur considerable expense in sesuring the cancellation of these leases, and that he authorized appellee to proceed to secure an option to cancel these leases and to incur the expense incident thereto.

The appellee cannot recover the expenses incurred solely in showing the property and negotiating a sale, but, in negotiating the proposed sale, there was no duty resting on the agent to secure these options to cancel the existing leases, and we conclude that appellee is entitled to recover the expenses incurred for that purpose.

Since the demurrer filed by appellant was general, the former judgment, reversing this case and dismissing the bill, is vacated, and the cause is affirmed and remanded, with directions that appellee be permitted to recover the expenses, if any, incurred in securing options to cancel the existing leases.

Suggestion of error sustained in part and overruled in part.

*Sustained in part.*

*Overruled in part.*